CHARLES J. FERCH v. JULIUS KONNE and Others.

January 19, 1900.

Nos. 11,903—(179).

**Action to Determine Boundary Line.**

In an action brought under the provisions of G. S. 1894, § 5823, et seq., it is *held* that the evidence was sufficient to support the finding of the court as to the original location of a certain government corner between two sections, the evidences of which location by the surveyors had been obliterated.

**Lost Corner—New Survey.**

A survey made for the purpose of establishing lost corners on a standard parallel or correction line may be rejected in part because made under a mistake of fact as to the existence and location of a certain corner section, and yet be adopted by the court in so far as it was not controlled by such mistake.

**Field Notes.**

The government field notes gave the width of all sections on the north of the standard parallel, from section 33 to section 35, inclusive, at exactly 80 chains each,—240 chains in all,—from the southwest corner of section 33 (the corner claimed by the defendants as sufficiently identified) to the corresponding corner of section 36.

**Rule for Locating Lost Corner.**

In such a case, there being no surplus to distribute, the actual location of a lost closing corner between two sections lying south of the standard parallel is to be determined by measuring east or west, as the case may

be, from the nearest standard corner, the distance shown by the government field notes. These notes and the original plats control in such cases.

## Finding Sustained by Evidence.

The trial court fixed and established a lost closing corner at a certain specified distance west of an established section corner. On the evidence in this case, *held* correct.

Action in the district court for Lac qui Parle county to establish a boundary line. From a judgment entered pursuant to the findings of Powers, J., plaintiff appealed. Affirmed.

*E. T. Young*, for appellant.

*F. L. Cliff*, for respondents.

COLLINS, J.

This was an action brought under the provisions of G. S. 1894, § 5823, et seq., for the purpose of having the boundary line between sections 4 and 5, township 120, range 45, Lac qui Parle county, fixed and established, there being a dispute between landowners in each of these sections as to this line, arising out of the fact that the corner, as established by the government surveyors between those sections on the fifth standard parallel or north line of the township, was a "lost" corner. After a trial, the district court found certain facts, upon which it ordered judgment fixing and establishing the section corner between said sections 4 and 5 at a point on said standard parallel or town line 178 chains and 80 links west of the southwest corner of section 36, township 121, range 45, and

"That the section line between said sections 4 and 5 is a true line from a known and established section corner and government mound at the southwest corner of said section 4 and the point on said section line last above designated, viz., a point 178 chains and 80 links west of the southwest corner of said section 36, township 121, range 45."

The appeal is from a judgment entered in accordance with the order, and the principal contention is as to the exact location of the lost section corner before mentioned, plaintiff contending that it is west of the point fixed by the judgment.

As before stated, the north line of these two sections is the fifth standard parallel or correction line. This brings the sections in the township north of this standard parallel to the west of those bearing the same numbers in the township south of the parallel, in theory, about 19 chains. The exact location of the corner between these sections 4 and 5 on their south line, and the exact location of the corner between sections 35 and 36, in the township north, on this parallel line, and about two miles east of the corner in dispute, were well known, and were agreed on by all parties, and the court acted upon this fact when trying the case and when making its findings. It stands conceded that the last-mentioned corner was a proper starting point for all surveys westward along the standard parallel, and it was at this point that a surveyor by the name of Moyer commenced when he established, in the year 1893, the corner in dispute, and other lost corners on the line. On the trial of the action this Moyer survey was relied on by both parties, and no testimony of any consequence was offered as to other surveys. The plaintiff claimed that this survey was absolutely correct in every detail, while the defendants insisted that it should, in part, be rejected, but adopted as to the remainder. The court seems to have agreed with defendants.

As before stated, Moyer's initial point was the section corner between sections 35 and 36, the southwest corner of 36 on the standard parallel, and from thence he ran a random line to the state boundary, nine miles west. At the boundary line he found an identified government corner. He then ran the line back to the starting point, the southwest corner of section 36. There was a surplus according to this survey, and this fact seems to be undisputed. In accordance with the rules of the general land office, Moyer distributed this surplus by apportioning the same to each quarter section along the entire distance. This threw the plaintiff's west line over onto land claimed by one of the defendants, the owner of the northeast quarter of section 5, and generally disturbed the previous understanding in that vicinity as to where the north and south lines were. The defendants do not complain of the rules adopted by Mr. Moyer, but insist that, had he observed those rules precisely as they are laid down, there would have been no surplus

to distribute to the plaintiff or other landowners to the east. This claim is based upon a finding of the court to the effect that the southwest corner of section 33 on this standard parallel line, as located and marked by the government surveyors, was not a lost corner, but had simply become obliterated,—that is, no visible evidence remained of the surveyors' work; and that in fact this corner was at a point on the standard parallel line 240 chains west of the starting point, where it had been marked by one Julius Konne some 15 years before the trial, and had since been preserved by means of a fence post. If the evidence was sufficient to support this finding, it follows that Moyer should have terminated his survey to the west at this identified corner. His actual location of lost corners along the parallel would, in such case, be based upon a mistake of fact.

The corner of a governmental subdivision is where it was placed by the government surveyors, whether placed right or wrong. If the original post or monument has disappeared, or become obliterated, the site of its former location may be established by clear and satisfactory evidence. The location so shown and established will control. Beltz v. Mathiowitz, 72 Minn. 443, 75 N. W. 699. See also Stadin v. Helin, 76 Minn. 496, 79 N. W. 537. An examination of the testimony of the witnesses who were sworn upon this point convinces us that the finding was fully warranted. It need not be discussed, for it was clear and convincing. Nor was the court compelled to depend wholly upon the verbal testimony as to where the southwest corner of section 33 was originally fixed by the surveyors. The government field notes gave the width of all sections on the north of the standard parallel from section 33 to section 35, inclusive, at exactly 80 chains each (240 chains in all) from the southwest corner of section 36 to the corresponding corner of section 33 (the corner claimed by the defendants as sufficiently identified). When Moyer made his actual survey on the ground in 1893, he found the distance from one of these points to the other to be that fixed by the field notes, substantially. The discrepancy was not five feet for the entire distance of three miles,—a difference hardly noticeable. This was strongly corroborative of the testimony of the witnesses who claimed to have seen the original stake, witness pits, and mounds.

What has been said disposes of the claim of plaintiff's counsel that the Moyer survey must be taken as a whole, and must control. But he urges that the court below, although accepting and relying upon a part of Mr. Moyer's testimony and survey,—that pertaining to his work east of the so-called "Konne corner,"—wholly ignored the rules by which the lost corner should have been located, because no survey was ordered between the two established points. This claim is without foundation.

According to the rules of the general land office in force when Moyer made his survey (circular of 1883, and really not changed by the circular of 1896), lost or obliterated corners along a standard parallel or correction line are restored by proportionate measurements on the line, conforming as nearly as possible to the field notes, and joining the nearest identified original standard corners on opposite sides of the missing corner or corners, as the case may be, and then applying the rule:

As the original field-note distance between the selected known corners is to the new measure of said distance, so is the original field-note length of any part of the line to the required new measure thereof. The sum of the computed lengths of the several parts of a line must be equal to the new measure of the whole distance.

This is exactly what Moyer did, his error consisting only in failing to discover and accept the restored southwest corner of section 33 as the true corner. But from his testimony, and that of the witnesses who were with him,—the two surveyors who refused to accept his conclusions, or to join in his report,—it was conclusively established that the distance between the nearest identified corners, the southwest of 36 and the southwest of 33, was measured when running the line west, and was practically 240 chains, as it should have been according to law as well as the government field notes. There was, therefore, no surplus and no deficit in the sections lying between these two ascertained standard corners, and no circumstances or conditions for the application of the rule above stated, where, from a survey on the ground, it appears that there is a surplus or a deficit to be adjusted between the landowners. By actual measurement it had been ascertained that the field notes were correct, and that each of the sections was 80 chains in length on the

line. This being established by the testimony, the court below had simply to determine, according to the rules, how far east or west from the proper corner was the closing corner between sections 4 and 5, for this point was the northwest corner of plaintiff's land, and a line drawn from that corner to the corner between these sections on their south line, over which corner there was no dispute, would, necessarily, be plaintiff's west boundary line.

It may also be noticed in passing that, even with this as his west line, his quarter section contains more than 160 acres. From the field notes and the original plats it appeared that the closing corner between sections 4 and 5 was located and fixed by the surveyors who subdivided the township at a point 18 chains and 80 links west from the nearest standard corner,—the southwest corner of section 34; and it was at this point that the court established it, in strict conformity to the original surveys, as required by G. S. 1894, § 836. This point being fixed, the order made by the court that the corner section between sections 4 and 5 on the standard parallel line be established and adjudged at a point 178 chains and 80 links west of the southwest corner of section 36 followed as a matter of course. It was not necessary, under the statute, for the court to direct a resurvey, and an actual location, by monument or otherwise, of the corner. If any dispute should arise in the future, the question can easily be settled by measurements.

Judgment affirmed.